MATTER OF ADAMSKA

Application for Classification as Refugee

A-11515308

*Decided by Regional Commissioner April 26, 1967*

Applicant, a native and citizen of Poland, has established for the purpose of refugee classification under the proviso to section 203(a)(7), Immigration and Nationality Act, as amended, that she fled from Poland because of fear of persecution on account of political opinion when she came to the United States as a nonimmigrant visitor in June 1959, where her known conduct after arrival—did not register with the Polish Embassy, sent back her return-trip ticket, and in proceedings in July 1959 conceded her deportability as an immigrant at entry without an immigrant visa—is consistent with her allegations that because of her repeated refusals to join the Communist Youth Organization she experienced many difficulties in her daily life in Poland, including employment and obtaining living quarters, and that as an employee of the American Embassy in Warsaw beginning in 1957 and as a person of known anti-Communist beliefs she was under strict surveillance by Polish officials and was in fear of persecution.

ON BEHALF OF APPLICANT: Francis Sarnowiec, Representative, Polish American
Immigration and Relief Committee, Inc.
156 Fifth Avenue
New York, New York 10010

This matter is before the Regional Commissioner on certification of the decision of the District Director denying the application for preference immigrant classification under the proviso to section 203 (a)(7) of the Immigration and Nationality Act, as amended.

The applicant is an unmarried 39-year-old native and citizen of Poland. She was admitted to the United States on June 3, 1959 as a visitor for pleasure until December 15, 1959. An order to show cause in deportation proceedings was served July 21, 1959. On November 2, 1966 she applied to the District Director for refugee classification in conjunction with an application for adjustment of status under section 245 of the Act to be considered by the special inquiry officer in a reopening of the deportation proceeding.

An application for temporary withholding of deportation under section 243(h) of the Immigration and Nationality Act was denied

January 26, 1960. That subsection then authorized the Attorney General to withhold the deportation of any alien to any country in which in his opinion the alien would be subect to "physical persecution." The statutory standards for refugee status under section 203(a)(7), with which we are immediately concerned, are substantially broader, namely that "(i) because of *persecution or fear of persecution on account of race, religion, or political opinion* they have fled (I) from any Communist or Communist-dominated country or area. . . . and (ii) are *unable or unwilling to return* to such country or area *on account of race, religion or political opinion. . . ."* (emphasis supplied). The holding in 1960 that the applicant would not be subject to "physical persecution" in Poland is not determinative of the issues in the present application. Similarly we find not applicable *Matter of Bukowska,* 10 I. & N. Dec. 49, decided by the Board of Immigration Appeals, August 24, 1962, holding "physical persecution" had not been established by a native and citizen of Poland who might be unable to obtain a particular type of employment (teaching) in Poland because of her refusal to abandon her religious beliefs and to join the Communist Party. We shall proceed to examine the present application on its merits.

In her application, Form I-590, Miss Adamska alleges she fled from Poland on May 22, 1959 because she was under strict surveillance by the Polish Security Office as a person of known anti-Communist beliefs and as an employee of the American Embassy in Warsaw; that she had experienced many difficulties in her daily life and feared persecution sooner or later; and that she is unable and unwilling to return to Poland because she would be liable to persecution there. She added that since her arrival in this country she has expressed her feelings openly and that she has been blacklisted by the Polish Secret Police.

On February 14, 1967, the applicant executed an affidavit before an officer of this Service in which she stated that when she obtained her Polish passport and her visitor's visa (issued in Warsaw on March 26, 1959 and May 11, 1959, respectively) she intended to visit the United States and return to Poland but that about one month after her arrival here she decided not to return to Poland. The District Director found she had failed to establish that she fled from Poland because of persecution or fear of persecution on account of race, religion, or political opinion.

We are immediately confronted with an apparent discrepancy between the applicant's testimony of Februray 14, 1967 and her statements in the deportation proceeding conducted in 1959. In a sworn statement of July 14, 1959 she stated that although she obtained the passport and the visitor's visa, it was her real intention to come to

the United States and remain; that it had been her intention to do so for many years; that even while a student she desired to get out of Poland by applying for a summer course at Oxford for which she had been accepted by the British Consul but refused by the Polish authorities; and that she had hoped by coming to the United States she could live without fear and could work out her "papers" here. At the deportation hearing of July 28, 1959 after being placed on notice that her alleged deportability was based on her intention at the time of her admission on June 3, 1959 to remain in the United States permanently for which she did not have the appropriate entry documentation, she admitted these allegations in the order to show cause and conceded her deportability under section 241(a)(1) of the Immigration and Nationality Act in that at the time of her entry she was an immigrant not in possession of a valid immigrant visa. She did not then apply for any form of discretionary relief and specified England as the country to which she wished to be deported in the event deportation is required by law. Clearly she was aware at the deportation hearing that her testimony was against her own interest. Her statement of July 13, 1959 appears to have been freely and frankly given and was made at a time when the pertinent events and facts were fresh in her mind. That statement is consistent with background information discussed below and with her known conduct subsequent to her arrival. Her 1959 statements were accepted by this Service and the special inquiry officer as establishing deportability. We accept them here.

Miss Adamska's application for withholding of deportation filed August 13, 1959 may be summarized as follows:

In 1945 she began her studies at the University of Krakow, taking English as a major and German as a minor. The Polish Government then considered that anyone who studied English was opposed to the Government. It harassed and persecuted students and faculty in the English language program to the extent that a professor was imprisoned, the English faculty disbanded, and the students were required at their expense and inconvenience to attend classes and to take examinations at various locations. She was requested at the University to join the Communist Youth Organization and her refusal to do so marked her as an enemy of the regime. In 1949 the Polish Government refused to allow her to take a summer course at Oxford. She completed her studies in English in 1950 but continued in the School of Law until 1951. The normal procedure would then have been an internship at the Ministry of Foreign Affairs but she was refused the internship because she was not a member of the Communist Youth Organization and because she refused to join that organization. She was then required to apply for employment through a Government Commission which assigned her to a teaching position in a remote community. She, however, was informed by the community that it had no opening for her. She was able to obtain employment as a technical editor for the Polish Radio in Warsaw

but did not turn out any political material. She was repeatedly requested to join the Communist Youth Organization but refused. She skipped many compulsory ideological sessions which brought reprimands. She was criticized for programming too much Polish music. She was released from that position in 1954 because of her failure to prove her sympathy to the cause. She attempted to obtain a position as an airline stewardess in the hope of escaping, but was refused because of her lack of Communist affiliations. She became a proofreader and part-time secretary at a publishing house until 1957. She suffered similar experiences to those at the radio station. From 1951 to 1957, she was required to live in remote and crowded living quarters at rents which consumed a large part of her salary so that she was hungry at times and contemplated suicide. She learned she was to be discharged from the publishing house because of her absences from the ideological courses. In April 1957 she applied for and obtained a clerical position at the United States Embassy. For seventeen months she was without a regular home, as no one would rent to her because of her employment at the Embassy. In September 1958 she was able to lease a room until May 1959. There her telephone was tapped, her mail censored, and she was followed to and from her work. Upon her arrival in the United States she did not register at the Polish Embassy and she sent back her return trip ticket.

In support of her application for withholding deportation under section 243(h), the applicant presented a witness on December 30, 1959. This witness, a native and citizen of Poland, had resided in Poland from 1913 until September 1958. The witness had been in the employ of the United States Embassy at Warsaw from 1926 to 1939, from 1945 to September 1950, and July 1957 to August 1958. She was arrested in September 1950 and imprisoned for a period of ten months without a formal charge. She believes the imprisonment was because of her employment at the United States Embassy and after her release from her imprisonment she was advised not to return to the Embassy. Following the advent of Gomulka to power in Poland in October 1956, this witness filed a formal complaint with the Polish authorities, received an apology for the mistreatment and was informed there was no objection to the resumption of her employment at the United States Embassy. The witness was able to obtain an immigrant visa in 1958 and, although questioned by the Polish authorities, was not prevented from leaving Poland. She expressed the opinion that the many changes made by Gomulka were being revoked and that there was a return to the political oppression which existed before October 1956. The witness expressed the opinion that the applicant, if returned to Poland, would be persecuted. This opinion was based in part on the personal knowledge of the witness that the applicant had refused to join the Party in Poland and the applicant's association with the American Embassy. The applicant herself testified on the same date that she had received letters from her sister in Poland containing statements which the applicant understood to mean that

members of the Polish Security Police had been attempting to interview her at her last place of residence in Poland.

Also presented in support of the application for withholding of deportation were a series of five articles from the "New York Times" datelined Vienna, November 29, 30 and December 1, 2, and 3, 1959, written by A. M. Rosenthal who had just been expelled from Poland where he had been the correspondent of the "Times". These articles indicated that Gomulka was invoking strict disciplinary measures and pointed out that men previously taken for granted as destroyed in 1956 were returning to places of influence. Specific mention was made of Julian Tokarski, "the Stalinist target of the workers' wrath in 1956", now recalled from obscurity to the post of Deputy Premier, and General Kazimierz Witaszewski, until recently a diplomatic exile, a pro-Soviet Communist who had regained favor and had been made Chief of the Army Intelligence in Poland. Particularly pertinent in point of time is a statement that "At the last party congress in March 1959, official history was rewritten to make the Soviet Union the inspiration of 1956 instead of the main opponent of it."

After careful consideration of the entire record we find that the applicant fled from Poland because of her fear of persecution on account of her political opinions and that she is unwilling to return to that country because of her political opinions. As she meets the requirements of the proviso to section 203 (a) (7) of the Immigration and Nationality Act, as amended, her application for refugee status will be approved.

**ORDER:** It is ordered that the application for refugee status under the proviso to section 203 (a) (7) of the Immigration and Nationality Act, as amended, be approved.